**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

  v.

YGNACIO D. ZABALZA,

  Defendant - Appellant.

No. 02-3403

---

**APPEAL FROM THE DISTRICT COURT FOR THE**
**DISTRICT OF KANSAS**
**D. Ct. No. 02-CR-10010-WEB**

---

Submitted on the briefs:[*]

Paul S. McCausland, Young, Bogle, McCausland, Wells & Blanchard, P.A.,
Wichita, Kansas, for Appellant.

Eric F. Melgren, United States Attorney, and Brent I. Anderson, Assistant United
States Attorney, Office of the United States Attorney, Wichita, Kansas, for
Appellee.

---

Before **TACHA**, Chief Circuit Judge, **EBEL**, and **BRISCOE** Circuit Judges.

---

  [*]  After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th
Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

**TACHA,** Chief Circuit Judge.

On August 27, 2002, Defendant-Appellant, Ygnacio D. Zabalza, entered a conditional guilty plea to possession of approximately 250 pounds of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), reserving his right to appeal the district court's denial of his motion to suppress. Defendant filed a timely notice of appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

On January 26, 2002, Kansas Highway Patrol Sergeant Terry Kummer was traveling eastbound on Interstate 70 when he came upon a late-model blue Mercury Marquis. The Marquis was in the right-hand lane, traveling slower than Sergeant Kummer, so Sergeant Kummer moved to the left-hand lane. While following the vehicle, Sergeant Kummer observed it twice cross over the center line of the lane in which it was traveling. Sergeant Kummer stopped the vehicle for failing to maintain a single lane of traffic. According to Sergeant Kummer, the weather on this particular day was overcast with some wind, but, in his judgment, the weather would not have made it impracticable for a driver to maintain a single lane of travel. Sergeant Kummer had no difficulty maintaining a single lane and had not seen other drivers having difficulty.

Sergeant Kummer approached the driver's side of the vehicle and spoke with its only occupant, Defendant Zabalza. Sergeant Kummer told Zabalza that he was just making sure that Zabalza was not sleepy and asked to see Zabalza's license. Zabalza produced an Arizona driver's license. Sergeant Kummer testified at the suppression hearing that when he began talking to Zabalza he detected a "moderate to strong odor" of raw marijuana coming from the car and that he had no doubt there was marijuana in the car.[1] After a brief exchange between Sergeant Kummer and Zabalza, Sergeant Kummer opened the trunk and found numerous large brick-shaped packages in brown wrapping containing marijuana.

## II. Discussion

### A. Standard of Review

When reviewing a district court's denial of a motion to suppress, we defer

---

[1] The district court found Sergeant Kummer's testimony credible. Specifically, the district court stated:

> [T]he court finds credible the officer's testimony that he observed what appeared to be a traffic violation when the defendant's car twice crossed over the lane line and that he decided to stop the car for that reason. The court rejects as unsupported by any credible evidence the suggestion that Sgt. Kummer stopped the defendant in the absence of probable cause. Sgt. Kummer's testimony that he observed a violation was not only credible; it was essentially uncontradicted.

Dist. Ct. Op. at 9.

to the district court's findings of fact unless they are clearly erroneous.[2]  *United States v. Horn*, 970 F.2d 728, 730 (10th Cir. 1992).  In conducting our review, we consider the evidence in the light most favorable to the district court's ruling.  *Id.* (citations omitted).  We review *de novo*, however, the ultimate determination of reasonableness under the Fourth Amendment.  *Id.* (citations omitted).

      B.      <u>Whether Sergeant Kummer's Search of Zabalza's Vehicle and Seizure of the Marijuana Was Constitutional Under the Fourth Amendment</u>

In reviewing the constitutionality of traffic stops under the Fourth Amendment, we conduct a two-step inquiry.  First, we must determine "whether the officer's action was justified at its inception."  *United States v. Gonzalez-*

---

[2]  In several published and unpublished cases we have written that we review a district court's denial of a motion to suppress under a clear error standard.  *See, e.g.*, *United States v. Vargas*, 57 Fed. Appx. 394, 397 (10th Cir. 2003).  This does not, however, accurately express our standard of review in such cases.  Rather, as we clarify today, when reviewing a denial of a motion to suppress, we review only a district court's *factual determinations* under a clear error standard.

We trace the genesis of this language to our opinion in *United States v. Soto*, 988 F.2d 1548, 1551 (10th Cir. 1993).  Because we find that *Soto*, and often its progeny, state our standard of review in an imprecise fashion, we take this opportunity to clarify the standard that we employ in such cases.  *See Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1229 (10th Cir. 2001) (noting that whereas a panel lacks authority to overrule earlier cases, it is within its authority to clarify such cases).  To be clear, this clarification does not alter the law of this circuit.  Rather, it merely clarifies the standard of review that we in fact employed in *Soto* and its progeny.  Accordingly, we leave those rulings undisturbed.

*Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994).  Second, we must consider "whether the action was reasonably related in scope to the circumstances that first justified the interference."  *Id.*

i.  *The initial traffic stop*

"[A] detaining officer must have    an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile."  *Soto*, 988 F.2d at 1554 (citation omitted).  When evaluating the reasonableness of the initial stop, "[o]ur sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction."  *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (citation omitted).  The applicable Kansas statute, K.S.A. § 8-1522(a), provides that "[w]henever any roadway has been divided into two (2) or more clearly marked lanes for traffic, . . . vehicle[s] shall be driven as nearly as practicable entirely within a single lane."   Because he witnessed Zabalza's vehicle cross the center line twice,  Sergeant Kummer had more than the necessary objectively reasonable, articulable suspicion that Zabalza had committed a traffic violation.  *Compare United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir. 1999) ("[Officer] had probable cause to stop [defendant] after he saw the motor home drift onto the shoulder twice within a quarter mile under optimal road, weather and traffic

- 5 -

conditions."), *with United States v. Gregory*, 79 F.3d 973, 978 (10th Cir. 1996) (finding no reasonable suspicion based on "isolated incident of a vehicle crossing into the emergency lane of a roadway . . . . [where] road was winding, the terrain mountainous and the weather condition was windy") (citations omitted). Alternatively, at a minimum, Sergeant Kummer's observations were "sufficient to create a reasonable suspicion that [Zabalza] might be sleepy or impaired, and could present a risk of harm to himself and others." *Ozbirn*, 189 F.3d at 1199 (citing cases).

Based on the above, we conclude that Sergeant Kummer's initial stop of Zabalza was reasonable under the Fourth Amendment. *See Ozbirn*, 189 F.3d at 1198-99.

        ii.      *The investigative detention and subsequent search of the trunk*

"During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation." *Soto*, 988 F.2d at 1554 (citations omitted). The detaining officer may also question the vehicle's occupants regarding their identities, travel plans, and ownership of the vehicle. *United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir. 1989). Once an officer has completed a traffic stop, "'[i]f the driver produces a valid license and proof of right to operate the vehicle, the officer must allow him to continue on his way without delay for further

questioning.'" *Soto*, 988 F.2d at 1554 (quoting *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990), *cert. denied*, 501 U.S. 1207 (1991)).  However,

> [f]urther questioning is permissible in two circumstances.  First, the officer may detain the driver for questioning unrelated to the initial traffic stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring.  Second, further questioning is permissible if the initial detention has become a consensual encounter. *Gonzalez-Lerma*, 14 F.3d at 1483.

In this case, the district court found credible Sergeant Kummer's testimony that when he first began talking to Zabalza he detected a "moderate to strong odor" of marijuana coming from the vehicle.[3]  "Determinations of witness credibility [are] review[ed] for clear error."  *United States v. McRae*, 81 F.3d 1528, 1533 (10th Cir. 1996).  While Zabalza speculates in his brief that Sergeant Kummer might not have actually detected the odor of raw marijuana emanating from the vehicle at the inception of the stop, nothing in the record contradicts Sergeant Kummer's testimony on that point.  Because it is not clearly erroneous, we accept the district court's determination that Sergeant Kummer's testimony was credible.

An officer's detection of the smell of drugs in a vehicle is entitled to substantial weight in the probable cause analysis.  *United States v. West*, 219 F.3d 1171, 1178 (10th Cir. 2000).  "This court has long recognized that marijuana has

---

[3] *See supra* note 1.

a distinct smell and that the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle or baggage." *United States v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991) (citing cases); *see also United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212-13 (10th Cir. 2001) (holding that the smell of marijuana and irregularities in the trailer and log books of commercial truck created probable cause); *United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999) (holding that officer's detection of the smell of marijuana was sufficient grounds upon which to detain suspect). Thus, Sergeant Kummer's search of the trunk was supported by probable cause.[4]

### III. Conclusion

Based on the foregoing, we AFFIRM the district court's denial of Zabalza's motion to suppress and AFFIRM his conviction under 21 U.S.C. § 841(a)(1).

---

[4] Because we find that Sergeant Kummer's detection of the odor of marijuana emanating from the car at the inception of the stop established probable cause, we necessarily find that Sergeant Kummer's continued questioning of Zabalza was proper. This finding, in turn, eliminates the need for this court to consider whether Zabalza's consent was voluntary.