**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DAVID SCOTT MURRAY,

    Defendant-Appellant.

No. 19-8067
(D.C. No. 2:19-19-CR-00007-ABJ-1)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **SEYMOUR** and **MATHESON**, Circuit Judges.

In this appeal, Defendant David Scott Murray contends that the district court made erroneous factual findings and abused its discretion in denying his motion to suppress without holding an evidentiary hearing. We affirm.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1

## Background

On November 23, 2018, after observing erratic driving by David Scott Murray as he traveled eastbound on I-80 near milepost 305, two troopers with the Wyoming Highway Patrol followed Mr. Murry to a gas station located at 1855 West Curtis Street in Laramie, Wyoming.[1] The troopers parked and followed Mr. Murray into the gas station convenience store where they engaged him in casual conversation after he purchased a drink.[2]

The troopers were wearing their uniforms and introduced themselves to Mr. Murray. They chatted about Dallas Cowboys football, where Mr. Murray was coming from, and other topics such as Mr. Murray's recent break-up with his girlfriend. One trooper asked Mr. Murray if he liked the car he was driving, to which Mr. Murray responded that he did not. He further mentioned that his brother had rented the car for him, that he was an authorized driver, and that the car was having a traction control problem. When the trooper asked if he could see the rental car agreement, Mr. Murray readily agreed and began walking toward the rental car. The troopers followed.

When Mr. Murray opened the front passenger door to retrieve the rental agreement from the glovebox, the trooper immediately smelled a strong odor of raw marijuana. At

---

[1] Mr. Murray objects to the district court's recitation of these and other background facts because they were not presented as evidence but appeared only in the government's brief. Like the district court, we recite them only for context. They are not relevant to the merits of the case.

[2] Dash cam video/audio documenting the interaction with Mr. Murray was introduced into evidence. *See* Rec., vol. III (video). The interaction in the doorway of the gas station was not visible on the video but the audio recorded the conversation.

that point Mr. Murray was handcuffed, and the vehicle was searched. That search uncovered three bags containing sixty-four pounds of marijuana. One bag was on the rear passenger seat and the other two were in the trunk. The search also revealed a loaded Smith and Wesson .40 caliber gun in a backpack sitting on the floorboard by the front passenger seat.

On January 18, 2019, Mr. Murray was indicted for possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C §924(c)(1). On May 30, Mr. Murray filed a motion to suppress all evidence obtained during the search of his vehicle. The district court entered a notice setting a hearing on the motion to suppress. On June 19, the government filed a response to the motion, attaching as an exhibit the dash cam video/audio from the Wyoming Highway Patrol's vehicle. Rec., vol. I at 18. The district court reset the hearing on the motion to suppress for the next week but prior to the hearing the court entered an order denying the motion. Mr. Murray filed a motion to reconsider, which the court also denied. Mr. Murray then entered a conditional guilty plea to the firearm offense and was sentenced to five years' incarceration.

### Analysis

When reviewing the denial of the motion to suppress, we view the evidence in a light most favorable to the government and accept the district court's findings of fact unless they are clearly erroneous. *United States v. Hernandez,* 847 F.3d 1257, 1263 (10th Cir. 2017). Whether a search and seizure was reasonable under the Fourth Amendment is a question of law that we review de novo. *Id.* The standard of review for a trial court's

3

denial of an evidentiary hearing on a motion to suppress is abuse of discretion. *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995).

While the Fourth Amendment protects citizens from "unreasonable searches and seizures" conducted by law enforcement, U.S. Const., amend. IV, the Supreme Court has recognized that consensual encounters with law enforcement do not implicate the Fourth Amendment. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *see also United States v. Spence*, 397 F.3d 1280, 1282 (10th Cir. 2005) ("a consensual encounter is not a seizure for purposes of the Fourth Amendment."). A seizure does not occur just because law enforcement "approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434. Such an encounter will not implicate the Fourth Amendment "unless it loses its consensual nature." *Id*. Thus, where a trooper approaches someone who voluntarily answers non-coercive questions, the conversation falls outside the scope of the Fourth Amendment even if it reveals a crime.

The district court analyzed the issue of consent under the seven non-exhaustive factors listed in *Spence*, 397 F.3d at 1283, and determined that the troopers' encounter with Mr. Murray was consensual. The seven non-exclusive factors to be considered in determining whether a reasonable person would feel free to terminate an encounter with the police are as follows:

1) the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers;
2) whether the officers touch or physically restrain the defendant;
3) whether the officers are uniformed or in plain clothes;
4) whether their weapons are displayed;
5) the number, demeanor and tone of voice of the officers;

4

6) whether and for how long the officers retain the defendant's personal effects such as tickets or identification;

7) whether or not they have specifically advised defendant of the right to terminate the encounter or refuse consent.

*Id.* (quotation and citation omitted).

In considering whether an encounter is consensual, "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct 'would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Hernandez*, 847 F.3d at 1263 (quoting *Bostick*, 501 U.S. at 437). "There are no per se rules that govern this inquiry; 'rather, every case turns on the totality of the circumstances presented.'" *Id.* at 1264 (quoting *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir. 1999)).

Based upon the dash cam video/audio from the Wyoming Highway Patrol's vehicle, it is apparent that Mr. Murray's interaction with the troopers occurred in a public place and was not coercive. The troopers approached Mr. Murray in broad daylight at a busy gas station open to the public. There were other patrons at the gas station who were visible on the video. There is no evidence that the troopers blocked Mr. Murray's path of exit, or otherwise restrained him. Once inside the convenience store, the troopers approached Mr. Murray and initiated a conversation. There is no evidence that that they intimidated, touched, or restricted Mr. Murray's movements. *See United States v. Drayton*, 536 U.S. 194, 204 (2002) (determining an encounter was consensual because "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an

5

authoritative tone of voice."). It is also apparent from the audio that Mr. Murray voluntarily consented to show the troopers the rental car agreement and then led them to his rental car. It was only after Mr. Murray opened the door to the rental car that the troopers smelled a strong odor of raw marijuana. Mr. Murray was then taken into custody and the vehicle was searched. These facts were borne out by the dash cam video and audio. Based on this evidence, the district court did not err in concluding that the troopers' contact with Mr. Murray was consensual and that probable cause to search the vehicle was properly developed. *See United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003) ("This court has long recognized that . . . the odor of marijuana alone can satisfy the probable cause requirement to search a vehicle . . . .").

It was Mr. Murray's burden to make a threshold showing that he was entitled to an evidentiary hearing based on disputed issues of fact. *Chavez-Marquez*, 66 F.3d at 261. Mr. Murray did not raise any disputed issues of material fact nor did he challenge the facts or law as set forth by the government.[3] As a consequence, in ruling on the motion to suppress, the district court relied on the undisputed facts outlined by the government in concert with the dash cam video and audio, which established that Mr. Murray agreed to show the troopers the rental car agreement, that he led the troopers to his vehicle, and that the troopers smelled marijuana when he opened the door to retrieve the document. These facts provided probable cause to search the rental car.

---

[3] As the district court made clear, Mr. Murray failed not only to meet his burden of identifying any disputed facts but also failed entirely to "deliver any meaningful recitation of the facts." Rec., vol I at 32-33.

Viewing the foregoing evidence in a light most favorable to the government, the district court's denial of the motion to suppress was not predicated on erroneous factual findings and the court did not abuse its discretion in denying the motion without holding an evidentiary hearing.  Accordingly, we affirm the district court's denial of Mr. Murray's motion to suppress.

Entered for the Court


Stephanie K. Seymour
Circuit Judge